Appellants, Cheryl A. Biddle, individually and as surviving spouse and heir at law of Robert A. Biddle, deceased, and Gary Ball, bring this appeal from a judgment entry of the Trumbull County Court of Common Pleas granting the motions for summary judgment of appellees, Warren General Hospital ("WGH"), Kevin Andrews, Elliott, Heller, Maas, Moro Magill Co., L.P.A., and Robert L. Heller.[1]
In June 1993, WGH, through its Chief Financial Officer, Mark Tierney, and without the approval of the WGH Board of Directors, hired the law firm to screen some of WGH's records in search of those patients who might be eligible for Supplemental Security Income ("SSI") reimbursement of medical expenses.[2] A procedure was established in which a courier for the law firm was sent to retrieve patient registration forms from WGH. The patient registration forms included the patient's address, birth date, employment information, and, most significantly, an "admitting diagnosis." Heller, a partner with the law firm, was responsible for screening the patient forms in search of those patients who were eligible for SSI benefits.
The law firm would then contact those patients regarding the possibility of having their financial obligation for medical treatment paid by SSI. Melanie Sutton ("Sutton") and Sharyn Jacisin, then employees of the law firm, were responsible for contacting those eligible patients. Heller instructed each of them to inform the patient that she was calling in behalf of WGH and that the patient might be eligible for Social Security benefits that may help in paying his or her medical bill. Under the agreement between WGH and the law firm, WGH would pay a contingency fee to the law firm from those amounts received by the hospital.
On May 12, 1994, Sutton learned that the law firm intended to terminate her employment. Apparently, as an act of prospective retaliation, she photocopied several of the registration forms of WGH's patients in the law firm's possession. She sent copies of these registration forms to WFMJ-TV, Inc. in Youngstown, Ohio. Those documents became the focus of an investigative report by Janet Rogers, which alleged breach of patient confidentiality at WGH. Appellant, Cheryl A. Biddle, and her husband, Robert A. Biddle, patients whose diagnoses were given to the law firm and then forwarded to WFMJ-TV by Sutton, voluntarily participated in this televised news report.[3]
As a result of this purported breach of confidentiality, appellants filed their original complaint on June 10, 1995, alleging the following claims against both WGH and the law firm: (1) invasion of privacy; (2) intentional infliction of emotional distress; and (3) negligence. Appellants filed claims against WGH predicated upon breach of an implied contract of confidentiality and statutory violations concerning patient confidentiality. Finally, appellants alleged that the law firm had engaged in improper solicitation of clients, giving rise to civil liability.
Appellees moved for summary judgment on all claims in appellants' complaint. Appellants filed lengthy memoranda in opposition to each motion, with accompanying Civ.R. 56(C) evidential material. In a judgment entry filed on October 3, 1996, the trial court granted appellees' motions for summary judgment on all of appellants' claims. Appellants filed a timely notice of appeal and now assert the following as error:
 "[1.] The trial court erred in granting the motions for summary judgment of [the law firm] and [WGH].
 "[2.] The trial court erred in granting the motion of [the law firm] for a protective order regarding the taking of the deposition of Melanie Sutton.
 "[3.] The trial court erred in overruling [appellants'] motion to strike and for sanctions.
 "[4.] The trial court erred in granting [the law firm's] motion to strike exhibits 1, 2, 3, and 4 of [appellants'] memorandum in opposition to [the law firm's] motion for summary judgment.
 "[5.] The trial court erred in denying [appellants'] motion to maintain this action as a class action."
In the first assignment of error, appellants assert that the trial court erred in granting appellees' motions for summary judgment on each of their claims. The standard for granting a motion for summary judgment is set forth in Civ.R. 56. The Supreme Court of Ohio has consistently held that in order for a motion for summary judgment to be granted, the moving party must demonstrate that:
 "(1) [N]o genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383, 385.
The Supreme Court of Ohio has recently explained the burden on a party seeking summary judgment as follows:
 "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." (Emphasis sic.) Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
I. BREACH OF CONFIDENTIALITY BY WGH
Applying these principles to the present case, we next determine whether summary judgment on appellants' claims was appropriate. This case presents issues that focus on the nature of the relationship between physician and patient and, to a lesser degree, between attorney and client. Preliminarily, we would like to clarify that this matter involves the duty of a physician and a hospital to maintain confidential patient information, not the physician-patient privilege. The physician-patient privilege prevents a doctor from testifying regarding any communication made between the physician and patient relating to the patient's treatment. R.C. 2317.02(B). The physician-patient privilege is not coextensive with the duty to maintain confidences, which applies to the non-testimonial disclosure of confidential information by a physician.
Therefore, the duty of confidentiality, which applies with equal vigor to hospitals and physicians, protects patients from a significantly broader scope of disclosures than the physician-patient privilege. See, e.g., Dellenbach v. Robinson
(1993), 95 Ohio App.3d 358, 360. One court has explained the importance of confidentiality as follows:
 "When a physician discloses confidential information without authority, he invades two distinct interests of the patient: (1) the patient's interest in the security of the confidential relationship and his corresponding expectation of secrecy; and (2) the patient's specific interest in avoiding whatever injuries will result from circulation of the information. [Note], Alan B. Vickery, Breach of Confidence: An Emerging Tort, 82 Colum.L.Rev. 1426, 1434 (1982). Invasion of the first interest will most likely result in the patient refusing to disclose confidential information in the future, even when it is important to do so. Invasion of the second interest could result in a variety of injuries to the patient:
 "The more intimate or embarrassing the information, the more damaging the disclosure will probably be. The [patient] may suffer ridicule, loss of business or professional reputation, or deterioration of personal relationships. Though injury often flows from widespread publication of disclosed information, the greatest injury may well be caused by disclosure to a single person, such as an employer or a spouse. [Id.]" Bullion v. Gadaleto
(W.D.Va. 1995), 872 F. Supp. 303, 306.
The duty of confidentiality is derived from several sources, the first of which is the statutory physician-patient privilege, R.C. 2317.02(B). Second, the Hippocratic Oath, although rather brief, focuses significantly on confidentiality and states, in part "[w]hat I may see or hear in the course of the treatment or even outside of the treatment in regard to the life of men, which on no account one must spread abroad, I will keep to myself holding such things shameful to be spoken about." Third, an Ohio physician's certificate to practice medicine may be revoked or suspended for the willful betrayal of a professional confidence. R.C. 4731.22(A)(4). Fourth, the relationship between physician and patient is fiduciary in nature. Hammonds v. Aetna Cas. Surety Co. (N.D.Ohio 1965), 243 F. Supp. 793, 802. Accordingly, except to the extent that a physician's duty of confidentiality is derived from the statutory physician-patient privilege, this case involves only the physician's duty of confidentiality, not the physician-patient privilege.
In examining the different theories that courts typically have invoked to enable a party injured by a breach of confidentiality to recover damages, one commentator has observed that "[m]ost courts * * * have resorted to a confused tangle of legal theories, including invasion of privacy, implied term of contract, [and] implied private cause of action in [a] statute[.]" Note, Breach of Confidence: An Emerging Tort (1982), 82 Colum.L.Rev. 1426, 1437. In the instant case, appellants have pleaded each of these theories of recovery in addition to negligence, breach of the Code of Professional Responsibility, and the intentional infliction of emotional distress. Furthermore, appellants have alleged in the nineteenth paragraph of their complaint that WGH "conducted a systematic, planned and concerted practice of the release of confidential patient information without prior authorization to do so, thus violating the patient [sic] confidentiality." Accordingly, appellants adequately pleaded the tortious breach of confidentiality claim.
Therefore, due to the importance of the duty to maintain confidences, and to clarify the law on this subject, we expressly recognize the tort of breach of confidentiality in Ohio.[4]
We further hold that in order to establish a cause of action for breach of confidentiality, a plaintiff must demonstrate an "unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship." Id. at 1455. This approach has been adopted either directly or indirectly in several other jurisdictions. Vassiliades v. Garfinckel's, Brooks Bros.
(D.C.App. 1985), 492 A.2d 580, 591; Humphers v. First InterstateBank (Or. 1985), 696 P.2d 527, 536. See, also, Lujan v. Mansmann
(E.D.Pa. 1997), 956 F. Supp. 1218, 1229; Alberts v. Devine
(Mass. 1985), 479 N.E.2d 113, 120; Saur v. Probes (Mich.App. 1991),476 N.W.2d 496, 498; Morris v. Consolidation Coal Co. (W.Va. 1994),446 S.E.2d 648, 657; Bullion at 305.
Although this cause of action has not been explicitly recognized by any of Ohio's courts, the Supreme Court of Ohio has implicitly recognized the tort in Littleton v. Good SamaritanHosp. Health Ctr. (1988), 39 Ohio St.3d 86, 98, n. 19, in which the court stated that "[i]n Ohio, a physician can be held liable for unauthorized disclosures of medical information." Furthermore, the United States District Court for the Northern District of Ohio, applying Ohio law, has held that "[t]he unauthorized revelation of medical secrets, or any confidential communication given in the course of treatment, is tortious conduct which may be the basis for an action in damages." Hammonds
at 802. Furthermore, other cases applying Ohio law have implied the existence of a cause of action sounding in tort against a physician for breach of confidentiality. Howes v. United States
(C.A.6, 1989), 887 F.2d 729; Neal v. Corning Glass Works Corp.
(S.D.Ohio 1989), 745 F. Supp. 1294; and Alexander v. Rev. HarrietCulp (Sept. 4, 1997), Cuyahoga App. No. 71186, unreported, 1997 Ohio App. LEXIS 3994.
Before determining whether a tortious breach of patient confidentiality occurred in the present case, some explanation of the elements of the cause of action will be helpful. First, we decline to define which other relationships are "confidential" under this test, except to hold that a physician-patient relationship is confidential. Second, although this is not intended to be an exhaustive list, for purposes of this cause of action, a physician's disclosure is "privileged" in those instances when public policy and the Revised Code mandate disclosure such as: (1) diagnosis of occupational diseases, R.C.3701.25 and 4123.71; (2) contagious or infectious diseases, R.C.3701.24(C) (HIV)[5] and 3707.06(other infectious diseases); (3) suspected child abuse, R.C. 2151.421; and (4) certain evidence of serious criminal conduct, R.C. 2921.22.
Turning to the case at bar, we must consider whether the Civ.R. 56(C) evidential materials demonstrate the existence of a genuine issue of material fact. Again, to establish a cause of action, appellants must demonstrate the unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned in a confidential relationship. Upon a review of the Civ.R. 56(C) evidence presented, there appears to be no dispute that WGH gave these nonpublic documents to the law firm. Therefore, there is a factual question regarding whether WGH disclosed to a third party nonpublic information obtained through a confidential relationship.
WGH's primary argument in support of its contention that it did not breach patient confidentiality is that appellants consented to the release of the registration forms to the law firm. This argument fails for two reasons. First, the purported waiver was not properly before the trial court. When considering a motion for summary judgment, a court can consider only "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact[.]" Civ.R. 56(C). The proper procedure to submit documentary evidence in a summary judgment exercise is to incorporate the document through an affidavit from an individual with personal knowledge that the document is a true and accurate reproduction. Civ.R. 56(E); State ex rel. Corriganv. Seminatore (1981), 66 Ohio St.2d 459, 467.
In the present matter, WGH attached a copy of a purported "consent form" to its motion for summary judgment. In the absence of an accompanying affidavit, pursuant to Civ.R. 56(E) andSeminatore, the trial court could not consider the consent form when addressing WGH's motion for summary judgment.[6]
Second, even if the purported "Authorization For Release of Information" was properly before the court, that document would not provide the necessary consent to make summary judgment appropriate with respect to this element. The form states:
 "Authorization is hereby granted Warren General Hospital, its medical staff and medical associates to obtain and release to my insurance company and/or third party payor
such information, including medical records, as may be necessary for the completion of my hospitalization claims. I understand that the information released may contain documentation concerning treatment for alcohol and/or drug abuse, a psychiatric condition, or HIV test results, an AIDS diagnosis, or AIDS-related condition." (Emphasis added.)
By its express terms, this release only permits the disclosure of medical records to the patient's insurance company or to a third party payor, such as a governmental entity. The form does not directly or indirectly permit the disclosure of confidential medical information to WGH's law firm(s). Consequently, WGH has failed to carry its burden of showing that there is no issue of material fact with respect to the existence and/or scope of consent. Accordingly, appellants have raised a genuine issue of material fact on each of the elements of the tort of breach of confidentiality.
Appellees contend that they did not breach the duty of confidentiality because WGH provided the registration forms to the law firm, where they were to be kept confidential. However, the elements of the tort of breach of confidentiality only require the disclosure of confidential information to any third party, which includes a law firm for the hospital. If hospitals wish to engage in this type of procedure in the future, liability can be avoided by obtaining clear patient consent for this type of informational release.
Additionally, the law firm argues that WGH had "a qualified privilege to surrender the patient registration forms to the law firm. Likewise, the law firm had a qualified privilege to receive them and review them as it did." A qualified privilege is a defense to a defamation action "in which the interest that the defendant is seeking to vindicate is conditioned upon publication in a reasonable manner and for a proper purpose." Hahn v. Kotten
(1975), 43 Ohio St.2d 237, 243. The Supreme Court of Ohio further explained:
 "`Conditional or qualified privilege is based on public policy. It does not change the actionable quality of the words published, but merely rebuts the inference of malice that is imputed in the absence of privilege, and makes a showing of falsity and actual malice essential to the right to recovery.'" (Emphasis sic.) Id. at 244, quoting 50 American Jurisprudence 2d (1975) 698, Libel and Slander, Section 195.
This language indicates that a qualified privilege addresses the malice element in a defamation action. In the instant case, whether the disclosure was made with malice is irrelevant. Instead, any harm to appellants resulted from the disclosure of presumably truthful information relating to their medical conditions. Accordingly, in our view, the application of a qualified privilege is inappropriate in a case that does not involve defamation; thus, qualified privilege is inapplicable to the case at bar.
Assuming, arguendo, that the privilege could be applied in this case, we conclude that the public policy protecting the confidential nature of the physician-patient relationship is more compelling than the public policy permitting certain disclosures to be protected by a qualified privilege. Therefore, the release of these medical documents was not subject to a qualified privilege. Accordingly, the trial court erred in granting appellees' motions for summary judgment with respect to WGH's breach of patient confidentiality.
II. INDUCEMENT OF BREACH OF CONFIDENTIALITY
Although appellants do not allege a cause of action against the law firm for breach of confidentiality, they assert that the law firm induced WGH to breach its duty of confidentiality. As mentioned before, the relationship between a physician and a patient is fiduciary in nature. Hammonds at 802. In Hammonds, the court held that a third party who induces the breach of a fiduciary's duty of loyalty, or participates in such breach, is liable to the injured party. Id. at 803.
We are persuaded by the test pronounced by the Supreme Court of Massachusetts, which provides that a patient may recover in tort from a party who induces a physician to disclose confidential information about the patient when the following elements are proven:
 "(1) [T]he defendant knew or reasonably should have known of the existence of the physician-patient relationship; (2) the defendant intended to induce the physician to disclose information about the patient or the defendant reasonably should have anticipated that his actions would induce the physician to disclose such information; and (3) the defendant did not reasonably believe that the physician could disclose that information to the defendant without violating the duty of confidentiality that the physician owed the patient." Alberts at 121. See, also, Morris at 657.
Applying these factors to appellants' claim against the law firm, we conclude that there is a genuine issue of material fact concerning whether the law firm induced WGH to disclose confidential patient information. First, due to the nature of the relationship between the law firm and WGH, it is immediately apparent that the law firm was aware of the physician-patient relationship. Second, there is a factual question as to whether the law firm should have reasonably anticipated that its actions would have induced WGH to release confidential patient information. In his deposition, Heller testified that at the original meeting regarding the arrangement between WGH and the law firm, he "proposed" that the "law firm attempt to be a collection agency for [WGH] in getting individuals whose medical bills weren't paid, potentially eligible for SSI * * *." Heller further stated that he informed WGH's representatives at the meeting that in order to perform this service, he needed to know each patient's "medical condition." Consequently, there is an issue of fact on the question of whether the law firm induced WGH to release such information.
The final issue with respect to the inducement claim is whether the law firm reasonably believed that WGH could disclose the admitting diagnoses without breaching physician-patient confidentiality. The law firm argues that there was no breach of confidentiality here since the registration forms were protected by the law firm's duty of confidentiality to its client, WGH. DR 4-101(B)(1). However, in our view, the determination of whether such a belief was reasonable is a question of fact since the law firm did not raise the issue of confidentiality during the planning and negotiation of the arrangement, and the law firm's attorneys should have had a heightened awareness of the extreme importance of maintaining confidentiality. Accordingly, appellants have raised a genuine issue of material fact on the claim of inducement of breach of confidentiality against the law firm.
In summary, we hold that summary judgment was improper with respect to appellants' claim against WGH for tortious breach of patient confidentiality. Further, we conclude that appellants have asserted a cognizable claim against the law firm for inducing WGH to breach patient confidentiality.
III. INVASION OF PRIVACY
We will next address the other theories of relief expressly raised by appellants. First, appellants assert that the trial court erred in granting appellees' motions for summary judgment on their invasion of privacy claims. In Housh v. Peth (1956),165 Ohio St. 35, paragraph two of the syllabus, the Supreme Court of Ohio held:
 "An actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."
In the present case, appellants argue that they have presented cognizable claims on the second and third aspects of this tort. In order to present a claim on the publicity prong of invasion of privacy:
 "There must be publicity; the disclosure must be of a public nature, not private. `Publicity' means communicating the matter to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge[.]" Killilea v. Sears, Roebuck Co. (1985), 27 Ohio App.3d 163, 166.
In the case at bar, neither WGH nor the law firm publicized any of the information on the consent forms. WGH sent the forms to the law firm, where they were to be kept private under the attorney-client confidentiality that existed as a result of the attorney- client relationship between WGH and the law firm. DR 4-101(B)(1). Although we do not approve of the disclosure to the law firm, we cannot conclude that when one provides information to an attorney within an attorney-client relationship that that matter is substantially certain to become public knowledge. The only way that the forms became public in this instance was through Sutton's intentional disclosure to WFMJ-TV. Consequently, the trial court did not err in granting appellees' motions for summary judgment on appellants' cause of action premised upon the publicity aspect of invasion of privacy.
Appellants also contend that the trial court committed reversible error by granting appellees' motions for summary judgment relating to appellants' claim for invasion of privacy based upon an intrusion into their private activities. The intrusion prong "is akin to trespass in that it involves intrusion or prying into the plaintiff's private affairs. Examples would be wiretapping, [or] watching or photographing a person through windows of his residence[.]" Killilea at 166. In a situation where there is no physical intrusion in the nature of a trespass, liability under this theory may arise when the defendant has investigated or examined the plaintiff's private concerns, such as opening private mail. Restatement of the Law 2d, Torts (1965) 378-379, Section 652B, Comment b.
With respect to WGH, we perceive no intrusion into the private affairs of appellants because WGH possessed appellants' medical records from the outset. Consequently, WGH could not have invaded appellants' private affairs; thus, summary judgment was appropriate on the claim against WGH.
However, the claim against the law firm differs significantly from the claim against WGH. Before forming an attorney-client relationship with WGH, the law firm did not have access to appellants' registration forms. The law firm became privy to the information contained in those forms after beginning that relationship. However, we do not perceive any facts indicating that the law firm intentionally trespassed or investigated appellants' private affairs. The receipt of the consent forms, including the admitting diagnoses, was merely incidental to the analysis necessary to determine appellants' SSI benefits eligibility. Thus, the law firm did not seek that information intending to learn private facts about appellants. Accordingly, appellants have not set forth a cognizable claim for invasion of privacy on the basis of the intrusion into an individual's private affairs. Therefore, the trial court did not err in granting appellees' motions for summary judgment on appellants' invasion of privacy claims.
IV. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
Next, appellants argue that the trial court inappropriately granted appellees' motions for summary judgment with respect to their claims for the intentional infliction of emotional distress. The Supreme Court of Ohio has set forth the following test for determining whether a defendant is liable for the intentional infliction of emotional distress:
 "One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, syllabus.
In explaining the definition of extreme and outrageous conduct, the court has further explained:
 "`Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"'" Id. at 375, quoting Restatement of the Law 2d, Torts (1965) 71, Section 46(1), comment d.
Appellants' allegations fail to raise a factual question on claims for the intentional infliction of emotional distress because appellees' conduct was not outrageous. Initially, we note that the release of confidential information was an attempt to discover potential financial assistance in paying appellants' medical bills. Furthermore, the transmittal of the information was made to a law firm where that information should have been kept confidential. Therefore, although this arrangement without consent is not commendable, such behavior does not rise to the crest of outrageous conduct under Yeager. Consequently, the trial court did not err in granting appellees' motions for summary judgment on appellants' intentional infliction of emotional distress claims.
V. NEGLIGENCE
Next, appellants assert that they raised a cognizable claim for negligence against both WGH and the law firm. In order to establish a cause of action for negligence, the plaintiff must show that: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the defendant's breach of duty proximately caused the plaintiff's damages; and (4) the plaintiff sustained damages. State ex rel. Fisher v. Warren StarTheater (1992), 84 Ohio App.3d 435, 441.
Appellants argue that appellees negligently failed to maintain patient confidentiality by creating a relationship that resulted in a breach of patient confidentiality. However, each claim here is premised upon intentional conduct. The record indicates that WGH intentionally entered into the arrangement with the law firm to improve collection of unpaid medical bills. Furthermore, the law firm purposely undertook representation of WGH in procuring SSI benefits to assist certain patients in paying their fees. Therefore, the arrangement was entirely intentional, and WGH and the law firm are subject to potential liability as previously pronounced in this opinion.
VI. BREACH OF IMPLIED CONTRACT OF CONFIDENTIALITY
Appellants next claim that the trial court erroneously granted WGH's motion for summary judgment with respect to their claim that WGH breached an implied contract of confidentiality.[7] "In contracts implied in fact the meeting of the minds, manifested in express contracts by offer and acceptance, is shown by the surrounding circumstances which make it inferable that the contract exists as a matter of tacit understanding." Hummel v.Hummel (1938), 133 Ohio St. 520, 525. Appellants assert that they had such an implicit agreement with WGH. In Hammonds, the court recognized such an implied contract of confidentiality and held:
 "Any time a doctor undertakes the treatment of a patient, and the consensual relationship of physician and patient is established, two jural obligations * * * are simultaneously assumed by the doctor. Doctor and patient enter into a simple contract, the patient hoping that he will be cured and the doctor optimistically assuming that he will be compensated. As an implied condition of that contract, this Court is of the opinion that the doctor warrants that any confidential information gained through the relationship will not be released without the patient's permission. Almost every member of the public is aware of the promise of discretion contained in the Hippocratic Oath, and every patient has a right to rely upon this warranty of silence. * * * Consequently, when a doctor breaches his duty of secrecy, he is in violation of part of his obligations under the contract." Id. at 801.
Other courts have recognized the implied contract of confidentiality between a patient and a physician. Leger v.Spurlock (La.App. 1991), 589 So.2d 40, 43; Doe v. Roe (1977),400 N.Y.S.2d 668, 674.
However, in our view, the concept of an implied in fact contract is inappropriate in the context of a breach of confidentiality by a physician or hospital. First, applying an implied contract of confidentiality is unnecessary in light of our recognition of the tort of breach of confidentiality. Second, the law of torts is more appropriately tailored to remedy the wrongs suffered by appellants in the present case. Concerning the difference between tort and contract law, the Supreme Court of Ohio has held:
 "`The law of torts is well equipped to offer redress for losses suffered by reason of a "breach of some duty imposed by law to protect the broad interests of social policy." * * * Tort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts. (* * *)
 "`The controlling policy consideration underlying tort law is the safety of persons and property — the protection of persons and property from losses resulting from injury. The controlling policy consideration underlying the law of contracts is the protection of expectations bargained for. If that distinction is kept in mind, the damages claimed in a particular case may more readily be classified between claims for injuries to persons or property on the one hand and economic losses on the other.'" (Citation omitted.) Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn. (1990), 54 Ohio St.3d 1, 7, quoting Sensenbrenner v. Rust, Orling Neale (Va. 1988), 374 S.E.2d 55, 58.
Applying this law to the case sub judice, tort law is the more appropriate theory of recovery. First, as explained earlier in this opinion, the duty of confidentiality is imposed by law, not necessarily by contract. Second, there is no indication that patients bargain for confidentiality; rather, it is assumed. For example, there is no indication that patients pay more for a promise of confidentiality. See Note, Breach of Confidence: An Emerging Tort (1982), 82 Colum.L.Rev. 1426, 1445. Third, damages for a breach of contract could be inadequate to compensate a plaintiff injured by the disclosure of confidential medical information because punitive damages are not recoverable in a breach of contract action unless the conduct constituting the breach is also a tort for which punitive damages are recoverable.Lake Ridge Academy v. Carney (1993), 66 Ohio St.3d 376, 381, quoting 3 Restatement of the Law 2d, Contracts (1981) 154, Section 355. See, also, MacDonald v. Clinger (1982), 446 N.Y.S.2d 801, 804.
In the case at bar, appellants asserted in their complaint that punitive damages were appropriate; thus, appellants could recover punitive damages only if the breach of an implied contract of confidentiality amounted to tortious conduct. Consequently, we perceive no need to recognize an implied contract of confidentiality in the instant matter. Accordingly, the trial court did not err in granting WGH's motion for summary judgment on the breach of an implied contract of confidentiality claim.
VII. STATUTORY VIOLATIONS
Next, appellants argue that the trial court erred in entering summary judgment on their claims for relief based upon violations of numerous state and federal statutes concerning patient confidentiality. In their pleadings, appellants failed to specify any statutory violations, but subsequently included specific statutes in their memorandum in opposition to WGH's motion for summary judgment. However, any such statutes also provide the basis for the previously acknowledged cause of action for the breach of confidentiality. Therefore, appellants' assertion is not well-founded.
VIII. SOLICITATION OF CLIENTS
Finally, appellants assert that the trial court erred in entering summary judgment against them on their claims that the law firm improperly solicited clients. It is axiomatic that a violation of the Code of Professional Responsibility does not, in itself, give rise to civil liability, but instead jurisdiction over these violations generally rests with the Supreme Court of Ohio. Palmer v. Westmeyer (1988), 48 Ohio App.3d 296, 298. In the present case, appellants have failed to assert any recognized claim on this ground; therefore, appellants' argument is without merit. Accordingly, appellants' first assignment of error is well-taken to the extent that appellants have presented a cognizable claim against WGH for tortious breach of confidentiality, and against the law firm for inducing WGH's breach of confidentiality, and is not well-taken with respect to the other foregoing enumerated issues and arguments under this assignment of error.
IX. PROTECTIVE ORDER
In the second assignment of error, appellants argue that the trial court erred in granting the law firm's motion for a protective order regarding the deposition of Sutton. Civ.R. 26(C) permits a court to grant a protective order when it would cause any person annoyance or embarrassment. A trial court has broad discretion in granting a protective order and its decision to grant such an order will not be disturbed on appeal in the absence of an abuse of discretion. Levy v. Univ. of Cincinnati (1992),84 Ohio App.3d 342, 349; see, also, Howell v. Dayton Power LightCo. (1995), 102 Ohio App.3d 6, 15.
In the case at bar, the law firm subpoenaed Sutton to take her deposition. Sutton moved to quash the subpoena on November 20, 1995, but appeared without counsel on November 21, 1995, for her deposition to be taken. Sutton invoked her Fifth Amendment privilege against self-incrimination in response to each substantive question asked by the law firm's counsel. Consequently, upon appellants' attempt to depose Sutton on May 30, 1996, the law firm filed a motion for a protective order.
The trial court's granting of the motion for a protective order is not reversible error. Appellants provided the trial court with no indication that Sutton intended to testify despite her attempt to quash a prior subpoena and her previous invocation of her Fifth Amendment privilege. Consequently, the trial court was protecting Sutton from the annoyance of attending another deposition solely for the purpose of invoking her Fifth Amendment privilege; thus, the trial court acted within its broad discretion in discovery matters in granting the protective order. Appellants' second assignment of error is not well-taken.
X. MOTION TO STRIKE AND FOR SANCTIONS
In the third assignment of error, appellants assert that the trial court erred in overruling their motion to strike and for sanctions. Appellants moved to strike "certain scandalous and indecent matter" contained in the law firm's motion for a protective order. Appellants have failed to allege any purported prejudice resulting from the trial court's failure to strike any inappropriate comments that would require a reversal. Therefore, appellants' argument is without merit.
Next, appellants contend that the trial court erred by failing to address their motion for sanctions. A trial court's ruling on a motion for sanctions under Civ.R. 11 will not be disturbed on appeal in the absence of an abuse of discretion. State ex rel.Fant v. Sykes (1987), 29 Ohio St.3d 65, 65. When a trial court fails to rule on a motion for sanctions under Civ.R. 11, it is presumed that the motion is overruled. Newman v. Al CastrucciFord Sales, Inc. (1988), 54 Ohio App.3d 166, 169. A court is not obligated to conduct an evidential hearing on a Civ.R. 11 motion.Harris v. Southwest Gen. Hosp. (1992), 84 Ohio App.3d 77, 88. Based upon a review of the record, we cannot conclude that the trial court abused its discretion in implicitly overruling appellants' motion for sanctions. Appellants' third assignment of error is not well-taken.
XI. EVIDENTIAL ISSUES
In the fourth assignment of error, appellants assert that the trial court erred by granting the law firm's motion to strike Exhibits 1, 2, 3, and 4, accompanying appellants' memorandum in opposition to the law firm's motion for summary judgment. Exhibit 1 is a document entitled "Accreditation Requirements for Acute Care Hospitals" and Exhibit 2 includes excerpts from an "Accreditation Manual for Hospitals."
As articulated earlier in this opinion, the correct procedure to properly present documentary evidence before the trial court in a summary judgment exercise is to incorporate documents through an affidavit indicating that the copies are true and accurate reproductions. Civ.R. 56(E); Seminatore at 467. In the present case, neither Exhibit 1 nor Exhibit 2 was properly presented through an affidavit. Therefore, the trial court did not err in excluding them from consideration.
Next, appellants assert that the trial court erred in striking Exhibit 3, the affidavit of appellant Cheryl A. Biddle. Affidavits submitted in a summary judgment exercise must contain facts as would be admissible at trial. Civ.R. 56(E). Statements in affidavits must be based on personal knowledge and legal conclusions are not appropriate. Brannon v. Rinzler (1991),77 Ohio App.3d 749, 756; State v. Licsak (1974), 41 Ohio App.2d 165,169.
In the case at bar, the trial court struck the following statements in Cheryl Biddle's affidavit:
 "4. That she has knowledge that Warren General Hospital has wrongfully and unlawfully released her private and confidential medical information to the law firm of Elliott, Heller, Maas, Moro and Magill Co., L.P.A.
" * * *
 "8. That due to this unauthorized, wrongful, and unlawful release and review of her private medical records, she now has very real concerns about her ability to speak freely and openly with her medical providers with regard to her medical condition and treatment.
 "9. That she feels the actions of Warren General Hospital and the law firm of Elliott, Heller, Maas, Moro, and Magill Co., L.P.A. are unjustified and outrageous in light of the clear duty to respect her privacy and maintain the confidentiality of her medical records.
 "10. That she feels the actions of Warren General Hospital and the law firm of Elliott, Heller, Maas, Moro and Magill Co., L.P.A. have intruded into her private affairs, namely her medical diagnosis and condition.
 "11. That as a result of this unauthorized, unlawful, and wrongful release and review of her private and confidential medical information, she has suffered and continues to suffer severe emotional distress and mental anguish which has necessitated her obtaining and continuing to receive psychological treatment therefore."
Each of these paragraphs makes legal conclusions that are impermissible in a summary judgment exercise. Consequently, the trial court did not err by striking Cheryl Biddle's affidavit.
Next, appellants assert that the trial court improperly excluded consideration of Exhibit 4, the affidavit of Thomas Dunn. Evid.R. 705 requires the expert to disclose the underlying facts and data upon which his opinion is based. In the present matter, Dunn merely stated in his affidavit that he had reviewed "materials generated to date during the course of discovery inBiddle, et al. vs. Warren General Hospital, et al. Case No. 95 CV 1061." Such a basis is too broad and, therefore, is insufficient to be the foundation of an expert opinion. Additionally, Dunn's statement only indicates the materials that he reviewed and not the factual basis for his expert opinion as required by Evid.R. 705. Consequently, the trial court correctly excluded Dunn's affidavit in ruling on appellees' motions for summary judgment. Appellants' fourth assignment of error is not well-founded.
XII. CLASS ACTION
In the fifth assignment of error, appellants assert that the trial court erred in overruling as moot appellants' motion to maintain their claims as a class action. Since we conclude that the trial court erred in granting appellees' motions for summary judgment on some of appellants' claims, appellants' fifth assignment of error is well- taken to the extent that the trial court overruled the motion as moot, and did not consider the substantive merits of the motion. Consequently, we remand this issue to the trial court for full consideration of appellants' motion to maintain this matter as a class action.
For the foregoing reasons, appellants' first assignment of error is well-taken to the extent that the record reveals questions of fact concerning causes of action against WGH for the breach of confidentiality, and against the law firm for the inducement of a breach of confidentiality. Additionally, appellants' fifth assignment is also with merit to the extent that the trial court did not substantially consider it and overruled it as moot. Appellants' second, third, and fourth assignments of error are not well-taken. The judgment of the Trumbull County Court of Common Pleas is reversed, and this cause is remanded to the trial court for proceedings consistent with this opinion.
DONALD R. FORD, PRESIDING JUDGE.
CHRISTLEY, J., concurs with Concurring Opinion.
O'NEILL, J., concurs.
[1] For brevity, "WGH" will refer to Warren General Hospital and its Chief Executive Officer, Kevin Andrews, collectively throughout this opinion. Further, "the law firm" will refer to Elliott, Heller, Maas, Moro Magill Co., L.P.A. and Robert L. Heller.
[2] Kevin Andrews testified that the arrangement did not require the approval of the Board of Directors.
[3] Both Cheryl and Robert Biddle were patients at WGH.
[4] Civ.R. 8(A) does not require a plaintiff to name a specific theory of relief, but instead only requires the plaintiff to allege facts, which, if proven, would entitle the plaintiff to relief.Illinois Controls, Inc. v. Langham (1994), 70 Ohio St.3d 512,525-526. Therefore, based upon the allegations in the complaint, appellees received adequate notice of this claim.
[5] This section permits disclosure only to the department of health, which must also keep this information confidential, subject to very limited exceptions. R.C. 3701.24(C).
[6] We acknowledge that in the absence of an objection from appellants, the trial court could have considered the alleged consent form. Biskupich v.Westbay Manor Nursing Home (1986), 33 Ohio App.3d 220,222. However, unless the trial court indicates that it has relied upon such improper materials, we must presume that it did not consider those documents, because to do otherwise would involve a presumption of irregularity in the trial court proceedings. Id. at 222-223. In the present matter, the trial court did not indicate reliance upon these documents; thus, we presume that the purported consent form was not considered by the court.
[7] We do not address the question of whether WGH and appellants had an express contract with respect to confidentiality because appellants have not raised that issue.